UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTNET WORLDWIDE CORP, INC., | Index No. |
| *Plaintiff,* | |
| -against- | COMPLAINT |
| FERRIAL HUSSEIN LANTON, | |
| *Defendant.* | |

Plaintiff Artnet Worldwide Corp, Inc., ("artnet" or "Plaintiff"), by its attorneys, Rottenberg Lipman Rich, P.C., and for its Complaint against defendant Ferrial Hussein Lanton ("Lanton" or "Defendant"), alleges as follows:

## SUMMARY OF THE ACTION

1. This is a breach of contract action for damages concerning Defendant's failure to pay for several works of art for which he was the highest bidder at Plaintiff's online auction.

2. In September, 2022, Plaintiff conducted an online auction (the "Auction") in which it offered, *inter alia*, four works of art as follows: Lot 137735 by Banksy entitled *Banksquiat (Grey)* 2019 (the "Banksy Work"; Lot 137686 by Shepard Fairey entitled *Icon Stencil with Letter* (2021) (the "Fairey Work"); Lot 137746 by Frank Stella entitled *Targowica (Poster Sketch)* 1974 (the "Stella Work"); and Lot 137769 by Steve McCurry entitled *Sharbat Gula, Afghan Girl, Pakistan*. (the "McCurry Work"), together (the "Works") *See* Exhibit 1.

3. Defendant registered to bid with artnet and by doing so agreed to be bound by artnet's Terms and Conditions, including its Master Buyer Agreement available on artnet's

website.

4. Defendant was the highest, and thus the successful, bidder on the four Works. Defendant's winning bids on the Works amounted to a total of $256,000. Pursuant to artnet's terms and conditions, the purchases were also subject to a buyer's premium of 25% of the hammer price, i.e. $64,000, plus any applicable sales and import/export taxes.

5. Defendant was sent invoices for his purchases in the amount of $320,000 (including buyer's premium). *See* Exhibit 2. Pursuant to artnet's Terms and Conditions, payment was due to artnet as agent for the sellers on receipt of invoice.

6. Defendant was repeatedly asked to pay for the Works, but Defendant failed to pay for any of them or the buyer's premium.

7. On or about October 21, 2022, the undersigned counsel for artnet wrote to Defendant demanding payment. Defendant responded by telephone and indicated that he wanted the Works but did not have any funds to pay for them.

8. Because Defendant failed to pay, artnet was forced to cancel the sales of the Banksy Work and the McCurry Work at their consignor's insistence. Artnet has not cancelled the sales of the Fairy Work or the Stella Work, and the consignors insist that the sales be honored.

9. Despite repeated requests by telephone and by text, Defendant has still failed to make any payment. Accordingly, Defendant is in breach of artnet's terms and conditions. Plaintiff hereby seeks judgment that the Defendant is in breach of his contract with artnet and an award of not less than $185,000 (the hammer price on the two pending sales and the buyer's premium on all four Works), plus artnet's reasonable attorney's fees and costs.

## PARTIES AND JURISDICTION

10. Artnet Worldwide Corp. is a duly organized corporation with its principal place of business at 233 Broadway, New York, NY.

11. Defendant Ferrial Hussein Lanton, aka Ferrial Mountbatten-Price, is an individual residing, on information and belief, at 2127 California Street NW, Washington, DC 20008.

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the parties are diverse and the amount in controversy exceeds $75,000.

13. Venue is proper in this district pursuant to 28 U.S.C. §1392 because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

14. The Defendant has transacted business in this state and has consented to personal jurisdiction in this district with respect to the subject matter of this action pursuant to the Master Buyer Agreement.

## STATEMENT OF FACTS

15. Artnet auctions conducts up to seventy online auctions every year, primarily in modern and contemporary works of art.

16. Each artnet auction is conducted over a set period of hours with an advertised start time and closing time. Potential buyers may register to bid and then bid by a number of methods including making bids on the auction platform from their computer.

17. Bidders may bid as often as they wish while the auction is open. The artnet auction page for each lot shows *inter alia* details of the work, an image of the work, the closing time of the auction, the current bid, and whether you as the user currently have the

leading bid. At the time the auction is advertised to end, the timer ticks down and the auction for that lot ends. The highest bidder when the auction closes is the successful bidder, assuming that bid is at or above the reserve, the number determined by consignor and artnet below which no sale is permitted.

18. Artnet's Master Buyer's Agreement which is on the artnet auctions site at https://www.artnet.com/auctions/master-buyer-agreement and which binds all bidders at auction, states in relevant part: *You must honor all bids placed in an auction, and are obligated to complete the transaction with the respective seller if you are the winning bidder. The winning bid is defined as the highest bid in an auction without a reserve, and/or the highest bid in a reserve auction that meets or exceeds the reserve price. You also agree to pay the Buyer's Premium to artnet with respect to any auction item for which you are the winning bidder (See Buyer's Premium below). You acknowledge that by not fulfilling these obligations, your action or inaction may be legally actionable.*

19. Artnet's Master Buyer's Agreement also states in part: *Unless otherwise stated, the Buyer's Premium shall be paid in US Dollars. artnet reserves the right to collect on accounts due by various means, including but not limited to, the use of collection agencies, legal counsel, and direct charge to payment methods that are on file. You will be responsible for all costs of collection (including reasonable attorneys' fees) in the event you fail to pay any amounts due to artnet hereunder. artnet reserves the right to charge Buyer storage fees for any Property left in artnet's physical possession more than 30 days after purchase.*

20. Among the artworks offered by artnet at auction in September 2022 (the "Auction") were the Works, specifically (i) Lot 137735, a screen print by Banksy entitled *Banksquiat (Grey)* 2019; (ii) Lot 137686, a stencil and mixed media on paper by Shepard Fairey entitled

*Icon Stencil with Letter* (2021); (iii) Lot 137746, a mixed media work on paper by Frank Stella entitled *Targowica (Poster Sketch)* 1974; and (iv) Lot 137769, a chromogenic print by Steve McCurry entitled *Sharbat Gula, Afghan Girl, Pakistan.*

21. On or before September 1, 2022, Defendant contacted artnet to register to bid at the Auction. Defendant was required as a condition of registration to provide a credit card number against which artnet would charge the buyer's premium if the bidder was successful.

22. Defendant was the successful bidder on the four Works.

23. When the auction for these lots closed on September 8, 2022 (for the first two works), September 14, 2022 (for the third work), and September 28, 2022 (for the fourth work), Defendant was sent an automated email congratulating him on his four successful bids and his purchases.

24. On or about September 22, 2022, artnet sent Defendant an invoice for the first three works in the amount of $270,000, being the hammer price of $216,000 and the buyer's premium of $54,000.

25. Pursuant to its Buyer's Master Agreement, artnet was also entitled to take the buyer's premium of $54,000 against the credit card on file for the buyer.

26. On or about September 28, 2022, artnet sent Defendant an invoice for the McCurry Work in the amount of $50,000, being the hammer price of $40,000 and the buyer's premium of $10,000.

27. Defendant responded by email to an after-sale request by artnet for payment of the first two Works by stating that he was taking care of the payment after a busy week.

28. Defendant however failed to pay for any of the Works.

29. Artnet's charge for the buyer's premium against the credit card on file for Mr

Lanton was rejected.

30. On or about October 21, 2022, the undersigned counsel wrote to Defendant at his address in Washington demanding that he honor his bids under the Master Buyer Agreement and make payment in full for all four Works. Shortly thereafter, Mr. Lanton telephoned the undersigned counsel, acknowledging his debt and reiterating his desire to pay for and take delivery of the four Works. Mr. Lanton still made no payment.

31. Because Defendant did not pay, the consignors of the Banksy Work and the McCurry Work required artnet to cancel the sale of those two Works.

32. To date Mr. Lanton has made no payment, either of the hammer price on the two pending Works or the buyer's premium on all four Works.

33. Defendant's failure to pay the hammer price and buyer's premium is a breach of the Master Buyer's Agreement to which he is bound. Buyer's refusal to pay the hammer price not only injures the consignors who are now left with works of art that will be difficult if not impossible to sell in the near future, but it injures artnet's business reputation with potential consignors and encourages other high bidders with simple buyer's remorse to breach their agreements with impunity and undermine the integrity of artnet's auctions. Defendant's failure to pay artnet its buyer's premium of $64,000 further damages artnet which has expended considerable resources in obtaining the consignment, advertising and holding its sale, and attempting to enforce its rights and those of the consignors.

## COUNT 1

**(Breach of Contract)**

34. Plaintiff hereby realleges Paragraphs 1 – 33 as though fully set forth herein.

35. By registering to bid and by bidding at artnet auctions, Defendant entered into

an enforceable contract with Plaintiff whose terms are set forth in artnet's Master Buyer's Agreement available on the artnet auctions website.

36. Plaintiff performed all of its obligations under the contract by offering the Works for sale at auction and making the Works available for collection on payment of the hammer price plus buyer's premium and applicable taxes, if any.

37. Defendant failed to perform under the contract by refusing to make payment of the hammer price plus buyer's premium.

38. Defendant's actions constitute breach of contract.

39. By its acts and omissions herein, Defendant has damaged artnet in the amount of at least $185,000, the hammer price on the Fairey Work and the Stella Work and the buyer's premium on all four Works to which it was it was entitled to under the Master Buyer's Agreement.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Declaring that Defendant is in breach of his obligations under the Master Buyer's Agreement;

B. Awarding artnet damages in the amount of at least $185,000

C. Awarding artnet its reasonable attorney's fees and costs associated with its attempts to enforce its rights under the Master Buyer's Agreement;

D. Awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
     March 7, 2023

ROTTENBERG LIPMAN RICH, P.C.


By: <u>*/s/ Christopher J. Robinson*</u>
     Christopher J. Robinson
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080
*Attorneys for Plaintiff*